# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

NINA SHAHIN,                          :
                                      :
            Plaintiff,                :
                                      :
      v.                              :      Civ. No. 07-641-LPS
                                      :
STATE OF DELAWARE and                 :
DEPARTMENT OF TRANSPORTATION, :
                                      :
            Defendants.               :

---

Nina Shahin, Pro Se, Dover, Delaware.

      Plaintiff.

Frederick H. Schranck and Laura L. Gerard, Deputy Attorneys General, Delaware Department of Justice, Dover and Wilmington, Delaware.

      Attorneys for Defendants.

## MEMORANDUM OPINION

March 29, 2013
Wilmington, Delaware

STARK, U.S. District Judge:

## I.    INTRODUCTION

Plaintiff Nina Shahin ("Plaintiff") filed this action against Defendants the State of

Delaware ("the State") and the Department of Transportation ("DOT") (together "Defendants")

alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act

of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA").  (D.I. 2)

Presently before the Court are Defendants' motion for summary judgment (D.I. 56) and

Plaintiff's opposition (D.I. 58) thereto, as well as Plaintiff's motion for jury trial (D.I. 61) and

motion for sanctions (D.I. 64), both opposed by Defendants (D.I. 63, 66).  For the reasons that

follow, the Court will grant Defendants' motion for summary judgment and will deny as moot

Plaintiff's motions.

## II.    PROCEDURAL BACKGROUND

Plaintiff's charge of discrimination, dated October 30, 2006, asserts that Defendants

discriminated against her by reason of national origin (Ukrainian) and age, and retaliated against

her for previously filed charges of discrimination, when they did not hire her for an accountant

position at the DOT.  (D.I. 2 at charge of discrimination)  Plaintiff filed her complaint on October

16, 2007.

The Court entered a Scheduling Order on April 14, 2008, setting a discovery deadline of

October 16, 2008, and a dispositive motion deadline of December 16, 2008.[1]  (D.I. 15)  Plaintiff

served discovery requests (D.I. 23, 24) on Defendants on July 13, 2009, to which Defendants

---

[1]This case was originally assigned to Chief Judge Gregory M. Sleet.  It was reassigned to the undersigned judge on August 24, 2011.

responded (D.I. 27, 28) on August 10, 2009. In March 2010, Plaintiff filed a request for an extension of time to complete discovery (D.I. 30) and, on May 4, 2010, she filed a motion for summary judgment (D.I. 34). The motions were denied, and Plaintiff appealed to the United States Court of Appeals for the Third Circuit. (*See* D.I. 46) The appeal was dismissed for lack of appellate jurisdiction. (D.I. 47)

Thereafter, the parties were ordered to submit status reports (D.I. 48), followed by entry of a second scheduling order (D.I. 52) on January 9, 2012, setting a new discovery deadline of July 9, 2012 and a new dispositive motion deadline of August 9, 2012. Defendants served Plaintiff with discovery requests, but she did not respond to the requests (D.I. 53, 54, 55). Defendants filed the pending motion for summary judgment on August 9, 2012.

## III.  FACTUAL BACKGROUND

Plaintiff applied for the position of accountant (posting #9403061) in the DOT. (D.I. 2 at charge of discrimination) She alleges that she belatedly returned calls to schedule her interview immediately upon her return for an overseas trip – only one day late – but was told the position had been filled, even though "it was only a period of interview scheduling." (D.I. 2)

Plaintiff's October 30, 2006 charge of discrimination is similar to the complaint and states that Plaintiff scored a 98 on the initial evaluation and, during her absence from the immediate area, the DOT scheduled anticipated interview dates of Thursday, September 28, 2006 and Friday, September 29, 2006. (D.I. 2 at charge of discrimination) Upon her return on Saturday, September 30, 2006, Plaintiff discovered the phone messages and returned the telephone calls the next business day, Monday, October 2, 2006, but was informed that a candidate was "appointed" to the position. (*Id.*)

2

Two accounting positions were advertised at the same time, and candidates were interviewed for both positions at the same time. (D.I. 27 at interrog. No. 1) Interviews were held on Thursday, September 28, and Friday, September 29, 2006. (*Id.* at interrog. No. 3) A note indicates that messages were left for Plaintiff on September 21 and September 22, 2006. (D.I. 28 at DelDot641-10) Thirteen candidates were interviewed for the two positions. (D.I. 27 at interrog. No. 2)

Althea Trower ("Trower"), a black female over forty, received one position, and Amy Penney ("Penney"), a white female under forty, received the other position. (D.I. 27 at interrog No. 1) Trower and Penney were both interviewed on September 28, 2006. (D.I. 28 at resp. 2) Trower was appointed to her position on October 30, 2006 and Penney was appointed to her position on October 16, 2006. (D.I. 27 at interrog. No. 4) The record reflects that Penney was advised by letter dated October 3, 2006, that she had been selected for the position. (D.I. 28 at DelDot 641-7)

The last interview was scheduled for 10:30 a.m. on Friday, September 29, 2006. (D.I. 28 at DelDot641-8) An email from the DOT, dated Friday, September 29, 2006, at 4:28 p.m. discusses the selected individuals. The subject line states, "EEO Hiring approval – Accountant – Pos. #9403, 10192." The email lists the top three individuals selected for each position. (*Id.*) Trower was the number two person on the "selected" list for position 9403, but the number one person declined the position. (D.I. 28 at DelDot641-11) Penney was the number one person on the "selected" list. (*Id.*) The DOT made its selection from those who responded to the interview requests. (D.I. 12 at ¶ 9) The documents of record reflect the race, but not the national origin, of the applicants.

3

## IV.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine

issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed

must be supported either by citing to "particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for the purposes of the motion only), admissions, interrogatory answers, or

other materials," or by "showing that the materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the

nonmovant must then "come forward with specific facts showing that there is a genuine issue for

trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133,150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)

(stating party opposing summary judgment "must present more than just bare assertions,

conclusory allegations or suspicions to show the existence of a genuine issue") (internal

4

quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Defendants move for summary judgment, or in the alternative for dismissal, on the basis that there are no genuine issues as to any material fact and they are entitled to judgment as a matter of law. Plaintiff opposes the motion on the grounds that she did not receive the January 9, 2012 scheduling order found at Docket Item 52. Plaintiff did not file a substantive response to the motion.

5

## V.    DISCUSSION

### A.    Scheduling Order

Plaintiff contends that the instant motion for summary judgment should not be considered because she did not receive a service copy of the January 9, 2012 scheduling order. She argues that this is "another gross violation" of her constitutional rights of due process and equal protection because the order was communicated to only one party. Plaintiff argues that, unless the Court establishes a new scheduling order, granting Defendants' motion for summary judgment will violate her right to due process and equal protection.

The court docket receipt for the January 9, 2012 scheduling order indicates that it was sent to Plaintiff at her address of record. It was not returned as undeliverable. In addition, the court docket reflects that Plaintiff propounded discovery upon Defendants and they responded to her requests. Conversely, Defendants served discovery (D.I. 53, 54, 55) upon Plaintiff, but she did not respond to the discovery. Plaintiff states that she never received the discovery requests and demanded proof of mailing. (*See* D.I. 62) Defendants provided Plaintiff with Federal Express tracking documents confirming delivery to Plaintiff's address.

The Court finds Plaintiff's position unavailing. The record does not support Plaintiff's position. The Court docket indicates that the scheduling order was sent to Plaintiff's address of record and it was not returned as undeliverable. Similarly, the record reflects that Defendants served Plaintiff with their discovery requests. Notably, there is nothing in the record to indicate that Plaintiff's ability to litigate this matter was hampered in any way. To the contrary, Plaintiff was provided with the discovery she sought, while Defendants were not.

6

## B.     Age Discrimination

Plaintiff alleges that Defendants discriminated against her on the basis of age, in violation

of the ADEA.  She seeks damages and injunctive relief.  The ADEA includes in its definition of

employer "a State or political subdivision of a State and any agency . . . of a state."  29 U.S.C.

§ 630(b)(2).  The Supreme Court has held that, in the ADEA, Congress did not abrogate the

states' sovereign immunity to suits for money damages by private individuals under the Eleventh

Amendment.  *See Kimel v. Florida  Bd. of Regents*, 528 U.S. 62 (2000).  While the Eleventh

Amendment permits suits for prospective injunctive relief against state officials, *see Ex Parte

Young*, 209 U.S. 123 (1908), this doctrine "has no application in suits against the States and their

agencies, which are barred regardless of the relief sought."  *Puerto Rico Aqueduct & Sewer Auth.

v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted).

Plaintiff filed her suit against the State of Delaware and its Department of Transportation.

She did not name any state officials.  Defendants are immune from suit.  Therefore, the Court

will grant the motion for summary judgment on the ADEA claims.

## C.     National Origin Discrimination

Plaintiff alleges she was not hired due to her national origin.  Defendants seek summary

judgment on the grounds that Plaintiff failed to establish a prima facie case of discrimination and,

alternatively, they have articulated a legitimate, nondiscriminatory reason for selecting the

candidates they did.

Plaintiff has provided no direct evidence of discrimination by reason of her national

7

origin.[2] Thus, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Plaintiff must first establish a prima facie case of discrimination by proving that: (1) she is a member of a protected class; (2) she sought and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.[3] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sarullo v. United States Postal Serv.*, 352 F.3d 789 (3d Cir. 2003); *accord Iyer v. Everson*, 238 F. App'x 834 (3d Cir. Aug. 3, 2007).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997). If the defendant meets this burden, the burden again shifts to plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804.

Here, Plaintiff alleges discrimination occurred when she responded one day late to messages left to schedule her interview, only to be told that the positions had been filled, "although it was only a period interview scheduling." (D.I. 2) It is undisputed that Plaintiff is of Ukrainian origin and that she was not hired for the position to which she applied. The record, however, does not include any evidence that Defendants were aware of Plaintiff's national origin.

---

[2]Under Title VII, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973).

[3]Defendants presume Plaintiff's membership in a protected class and her failure to be hired based solely on the face of the complaint, but they dispute whether her qualifications are established on the present record. (*See* D.I. 57 at n.1)

The evidence of record speaks only to the race of those hired – that Trower is black and Penney is white – not national origin. Based upon the record, the Court finds that Plaintiff has failed to establish a prima facie case of national origin discrimination. Plaintiff makes the leap from an unsuccessful employment application to employment discrimination based upon her national origin when there is no evidence of record to support an inference of discrimination. *See Iyer v. Everson,* 238 F. App'x 834 (3d Cir. Aug. 3, 2007) (unsuccessful applicant for position did not establish prima facie case of discrimination because he did not present evidence of circumstances that raised inference of discriminatory action; he also did not establish causal nexus between his membership in protected class and employer's decision not to hire him).

Alternatively, even if Plaintiff could make out a prima facie case of national origin discrimination, she has not produced evidence from which a reasonable juror could find that Defendants' reasons for their employment decisions were a pretext for discrimination. When a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant-employer to proffer a "legitimate non-discriminatory" reason for its actions. *Woodson,* 109 F.3d at 920 n.2. If defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See McDonnell Douglas,* 411 U.S. at 804. To do this, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder

9

reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (internal citations and quotation marks omitted).

Defendants have met their burden by articulating a legitimate, nondiscriminatory reason for not hiring Plaintiff. Plaintiff was not hired because she failed to respond to several calls for an interview. Nothing before the Court contradicts Defendants' proffered reason for their failure to hire Plaintiff. Nor is Defendants' proffered reason for their action weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo*, 352 F.3d at 800. Even construing the evidence in the light most favorable to Plaintiff, she has provided no evidence from which a fact-finder could either disbelieve Defendants' articulated reason or believe that a discriminatory reason was more likely than not the cause of the employment action. As there is no genuine dispute on the dispositive legal issue of whether Defendants had a discriminatory motive, the Court will grant Defendants' motion for summary judgment on the issue of national origin employment discrimination.

### D. Retaliation

Plaintiff appears to allege that she was not hired by Defendants in retaliation for previously filed charges of discrimination. To the extent she raises such a claim, this claim, too, fails.

To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) there was a causal connection between the protected activity and the employer's action. *See LeBoon v.*

10

*Lancaster Jewish Comty, Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007). Here, no reasonable juror could find for Plaintiff on the retaliation issue. There is no evidence of record that an adverse employment action was taken after, or contemporaneous with, a protected activity. Indeed, other than Plaintiff's bald assertions, there is no evidence that Plaintiff engaged in protected activity. Because there is no evidence of a nexus between the filing of a charge of discrimination and Defendants' hiring decision, the retaliation claim fails.

## VI.    CONCLUSION

For the above reasons, the Court will grant Defendants' Motion for Summary Judgment (D.I. 56) and will deny as moot Plaintiff's Motion for Jury Trial (D.I. 61) and Motion for Sanctions (D.I. 64).

An appropriate Order follows.